SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

Todd M. Ladson.
7901 Winsboro Drive
Fort Washington, MD 20744
   Plaintiff,

vs.

George Washington University
2121 Eye Street, NW
Washington D.C. 20052
   Defendant,

Case No.: 14-0005029

For Violation of:
(1) the D.C. Human Rights Act for Race and Age Discrimination;
(2) Title VII for Race Discrimination;
(3) Section 1981 for Race Discrimination
(4) Age Discrimination as Under the Age Discrimination in Employment Act.

Jury Demand

## CIVIL COMPLAINT

### Introduction

Pursuant to D.C. Superior Court Rules 3 and 8, Plaintiff Todd Ladson ("Officer Todd"), by and through his undersigned counsel Dhali PLLC, bring this action for race and age discrimination as under the D.C. Human Rights Act, D.C. Code § 2-1401-01 *et seq;* for race discrimination as under Title VII 42 U.S.C. 2000 (e) *et seq.,* and 42 U.S.C. § 1981; and for age discrimination as under the Age Discrimination in Employment Act (ADEA) 29 U.SC. § 621 *et al*, against his employer and defendant George Washington University ("GWU").

In September 1989, Officer Todd began working at the GWU as a Campus Police Officer. He is an African-American male age 53. During his 24 years of service, Officer Todd served the GWU campus community with distinction. He was also a recipient of countless honors and awards from the GWU campus police, District and Federal authorities, including in the case of the latter, the U.S. Department of Interior and the U.S. Park Police.

On or about April 2013, Officer Tiffany Justice, a female officer, made a complaint to the GWU Human Resources (HR) that she heard from a colleague of hers, who informed her, the following 3 hearsay statements attributed to Officer Todd. (1) That Officer Todd told Officer Linda Queen, a female Officer that, "*she* (Officer Queen) *and Officer Justice mess around;*" (2) Officer Todd informed Officer Livingston, a female officer "*that's Officer Justice she is one of you;*" and (3) that Officer Todd told Officer Nathaniel Potts, a male officer, "*that I warned her* (Officer Justice) *that she will have men and women after her.*"

Based on these 3 statements of hearsay, GWU placed Officer Todd on unpaid suspension on May 2013 under the rationale that the above statements created a sexually hostile work environment against Officer Justice.

On August 1, 2013, in a proceeding reminiscent of a kangaroo court, the GWU Special Panel convened to discuss the aforementioned statements and charges of sexual harassment by Officer Todd, and if these 3 statements, and other evidence of hearsay contributed to a sexually hostile work environment. The Panel said it was. Officer Todd was terminated soonafter. Other Caucasian (or white) and younger Officers who engaged in behavior far more egregious (further detailed below) than the one alleged to have been engaged in by Officer Todd, have only been suspended without pay for a period of 5 days of less. Consequently an action for race and age discrimination now follows against the GWU for discriminatory discipline and termination practices.

### Part I: Parties

1. Police Officer Todd Ladson is a 24 year veteran of the George Washington University Campus Police. He started his employment with GWU in September 2009 and was terminated on September 2013. He earned approximately $75,000 per year.

1. Officer Todd is an African-American male, age 53. Throughout his employment he was an employee as under D.C. Code § 2-1401.02 (9); 42 U.S.C. § 2000e *et seq* and 29 U.S.C.§ 630 of the ADEA.

2. Defendant the George Washington University is an educational institution of higher learning in Washington D.C. GWU is an employer under D.C. Code § 2-1401.02 (9) 42 U.S.C. § 2000e *et seq*, and 29 U.S.C.§ 630 of the ADEA.

## Part II: Jurisdiction & Venue

3. This Court has subject matter jurisdiction under D.C. Code Ann. § 11-921, and 42 U.S.C § 2000e *et seq*, and 42 U.S.C. §2000(e)-(5) f in order to protect rights guaranteed by 42 U.S.C §1981.

4. This Court has personal jurisdiction over the defendant's pursuant to D.C. Code Ann § 13-422/13-423.

5. Venue is proper in Washington D.C., because Officer Ladson worked in the District for GWU, and also all the allegations occurred in the District. GWU's only known office and principal business location is also in Washington D.C.

## Part III. Exhaustion Of Administrative Remedies

6. On June 23, 2013, Officer Todd filed a Charge of race and age discrimination with the Equal Employment Opportunity Commission (EEOC), charge number 570-2013-01447C, against the GWU. A copy was also cross filed with the D.C Office of Human Rights (OHR).

7. On March 26, 2014, the EEOC transferred the file to the OHR for processing.

8. On April 2014, an informal mediation was held at the OHR. Present were Counsel for GWU Ms. Susan Kaplan and Gilberto Garcia of the GWU EEO; an outline of the allegations in here were discussed.

9. On May 2014, we filed a Notice of Withdrawal with the OHR, so we may pursue the action in Court. As more than 180 days had passed since the time of his June 2013 filing, we also requested a copy of the Right to Sue from the EEOC.

10. There are no administrative obligations as under 42 U.S.C. § 1981 for race discrimination.

11. Plaintiff has no further administrative obligations.

### Part IV: Statement of Facts

12. Officer Todd began his employment with the GWU in September 1989. During his 24 years of service with the GWU he has received numerous awards and medals for outstanding dedication to his duties and to the safety and protection of the GWU staff and students. He along with all the other GWU campus police officers report to Chief Kevin Hay.

13. In reviewing his personal file, submitted by the General Counsel of the GWU, certain phrases and words are repeatedly used to describe Officer Todd's conduct and professional etiquette. He is described as providing *"prompt, professional and courteous police service on a consistent basis and the demonstration of excellent customer service, above and beyond the call of duty when appropriate,"*[1] *"outstanding performance during the Amsterdam emergency,"*[2] *"your actions set an*

---

[1] Letter dated January 9, 2013 from Chief of Police Kevin Hay
[2] Note dated April 22, 2012 from Lt. Brittle

*example that has to be recognized,"[3] "on behalf of the Leadership of the GWPD, please allow me to add our thanks and appreciation for the work involved"[4] and "I am pleased with your job performance in this area. You are a notable credit to the Department."[5]*

14. Where he has been written up, it was for procedural errors and not for his fitness in character. For instance, on November 12, 2011 he was issued a letter of warning for not using the "EMeRG tone system in reference to a medical call," a reimbursement notice from the GWU for a lost wand[6] and on September 26, 2007 for leaving his uniform in his locker. To the best of our knowledge, Officer Todd never had any performance issues while at the GWU.

15. In his 24 years of service, Officer Todd has also not been accused of sexual harassment by either his colleagues or other members of the university community. Infact as a training officer, he is also responsible for training female officers, and until the present allegation by Officer Justice no other female officer had come forward with an allegation of harassment or a hostile work environment as under Title VII, the D.C. Human Rights Act (DCHRA), or any other violation of state or university policy as against Officer Todd.

16. On April 2013, Officer Tiffany Justice (female) made the following three allegations of a sexually hostile work environment and harassment as against Officer Todd. GWU subsequently terminated him as a result.

---

[3] Note dated November 7, 2011 from Sgt. Brody
[4] Note dated September 15, 2011 from Capt. Glaubach
[5] Note dated March 2, 2009 from Chief Ison
[6] Note dated March 16, 2010

17. The first allegation made by Officer Justice alleges, that Officer Todd, told Officer Linda Queen (another female Officer) *"that you know everyone saying that you and Justice mess around."* This statement was then told to Officer Justice by Officer Queen.

18. The second allegation made by Officer Justice, attributed to Officer Todd, says, that Officer Todd, informed Officer Livingston (female Officer), *"that's Officer Justice she is one of you."* This statement was also told to Officer Justice by Officer Livingston.

19. The third allegation made by Officer Justice, is that she (Officer Justice) heard from Officer Nathanial Potts (male Officer) that Officer Todd told him (Officer Potts), *"that I warned her* (Officer Justice) *that she will have men and women after her."*

20. Officer Todd denies making these statements. We are also not told when these statements were made.

21. Moreover even assuming *arguendo* they were said, these statements in no way or form, implicate Officer's Justice's sexual orientation. In none of these statements do the words, gay, lesbian, sex, sexual orientation, love, love making, or any other word that implicates sexual orientation is used.

22. These statements are also complete hearsay and not admissible in Court under the rules of evidence. Infact, not only are they hearsay, but they are double hearsay – an out of court statement, containing another out of court statement.

23. Also the third statement has already been conceded by Officer Justice in her March 27, 2013 statement to Ms. Pereira of GWU Human Resources (HR), that, and we quote, *"Officer Potts could not make the determination of whether Officer Ladson*

*was stating he mentioned my name, specifically, or if he was just mentioning my name in the locker room."*

24. Officer Justice then goes to conclude, *"but my name was indeed mentioned in the locker room to Officer Potts."* By Officer Justice's own admission then, Officer Todd could well have mentioned Officer Justice's name to state that Officer's Justice's favorite colour is yellow.

25. Based on these barest of allegations and hearsay, GWU terminated the employment of Officer Todd in September 2013, for creating a sexually hostile work environment[7].

**Comparators. Other "Similarly Situated" GWU Officers Also Reporting to Chief Kevin Hay & Were Not Placed on Indefinite Suspension; They Were Also Not Terminated**

26. GWU however never terminated the employment of other non-African American male officers and those younger than Officer Todd, for making comments more serious than the hearsay allegations made by Officer Justice.

27. Officer George Brittle, a white male with 40 years of service with the GWU Police Department, was known and heard to frequently call Officer Hope Williams by her badge number "69" referring to a sexual position. She filed a complaint of sexual harassment and Officer Brittle was suspended for 5 days. He was never placed on indefinite suspension, nor was he terminated.

---

[7] None of these actions however constitute a hostile work environment. To determine whether a workplace is sufficiently hostile to be actionable under Title VII, a Court must "look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and, whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88, (1998). None of the statements alleged in here, are objectively offensive or humiliating; they also cannot be shown to interfere with Officer Justices' work performance. Finally, we along with Officer Justice are also not aware when these statements were made.

28. Officer Brittle again during roll call made frequent sexual comments about gay men, offending Officer Sims who filed a complaint of sexual harassment. Again, Officer Brittle was only suspended for 5 days. He was never placed on indefinite suspension, nor was he terminated.

29. And finally, Officer Reed Jones, a white male age 26, was known to frequently refer to African America Officers, by the highly racial term "Niggers." Officer Darrel Johnson filed a complaint of racial harassment and discrimination against Officer Jones. Officer Jones was suspended for 5 days. He was never placed on indefinite suspension, nor was he terminated[8].

30. Both Officers Brittle and Jones reported to GWU Police Chief Kevin Hay.

31. Officer Todd, an African-American male, age 53 was placed on indefinite suspension in May 2013, and then terminated on September 2013 by the Defendant GWU, and Police Chief Kevin Hay[9].

32. Consequently, GWU's actions of race and age discrimination were intentional and purposeful as against the Plaintiff Todd Ladson.

33. As an international institution of higher learning with a dedicated legal and human resources department, including an accredited law school, GWU is presumed to have a rudimentary understanding of federal and state employment laws, including the discrimination and civil rights laws. Despite this express and rudimentary

---

[8] As this Circuit's Court of Appeals has observed, "perhaps no single act can more quickly alter the conditions of employment than "the use of an unambiguously racial epithet such as 'nigger' by a supervisor. This single incident might well have been sufficient to establish a hostile work environment." *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572 (D.C. Cir 2013)

[9] *See Williams v. Wells Fargo Fin. Acceptance*, 564 F. Supp. 441 (E.D. Pa. 2008) (inconsistent application of discipline is evidence of pretext).

understanding of federal and state employment laws, GWU intentionally and purposefully violated the DCHRA, Title VII, Section 1981 and the ADEA by terminating the Plaintiff Officer Todd Ladson.

34. Since the time of his unlawful termination by the GWU, Plaintiff has suffered considerable emotional distress and suffering related to his job loss, attempts to obtain future employment and the loss of earnings and benefits. While the Plaintiff has attempted to mitigate his damages by obtaining employment, he is earning considerably less than his income from the GWU.

## Part IV: Cause of Action

### Count I: Race Discrimination As Under the DCHRA

35. Plaintiff re-alleges and incorporates by reference the allegations of all paragraphs above as though fully set forth herein.

36. At all present times Defendant GWU was an employer subject to the provisions of the D.C. Human Rights Act § 2-1401 *et seq* (DCHRA), of the District of Columbia Code.

37. At all pertinent times, Plaintiff Officer Todd Ladson was an African American male entitled to protection under the D.C. Human Rights Act.

38. The DCHRA prohibits discrimination in employment "for any reason other than individual merit" including without limitation "race."

39. By terminating Officer Todd Ladson for creating a sexually hostile work environment, and violating GWU policy and procedures (including its handbook) while not terminating other similarly situated non-African American males, Defendant GWU and/or its agents or its employees acting on its behalf intentionally and purposefully discriminated against Officer Todd Ladson on the basis of his race

by treating him differently from and less preferably then similarly situated non-African American officers in violation of the DCHRA.

40. Defendant's action gives rise to an inference of discrimination and GWU knew or should have known of the race discrimination that Plaintiff suffered. Defendant GWU's conduct has been intentional, deliberate, willful and in callous disregard of Plaintiff's rights.

41. Defendant GWU's acts of race discrimination caused Officer Todd Ladson to suffer economic losses, mental and emotional distress, embarrassment, humiliation and indignity.

42. This intentional, reckless and/or willful discrimination on the part of Defendant GWU constitutes a violation of Plaintiff's rights as under the DCHRA.

43. By reasons of Defendant GWU's discrimination, the Plaintiff is entitled to all legal and equitable remedies available under the DCHRA.

### Count II: Age Discrimination as Under the DCHRA

44. Plaintiff re-alleges and incorporates by reference the allegations of all paragraphs above as though fully set forth herein.

45. At all present times Defendant GWU was an employer subject to the provisions of the D.C. Human Rights Act § 2-1401 *et seq* (DCHRA), of the District of Columbia Code.

46. At all pertinent times, Officer Todd Ladson was an African American male age 53 entitled to protection under the D.C. Human Rights Act.

47. The DCHRA prohibits discrimination in employment "for any reason other than individual merit" including without limitation "age."

48. By terminating Officer Todd Ladson for creating a sexually hostile work environment, and violating GWU policy and procedures (including its handbook) while not terminating other similarly situated younger males, Defendant GWU and/or its agents or its employees acting on its behalf intentionally and purposefully discriminated against Officer Todd Ladson on the basis of his age by treating him differently from and less preferably then similarly situated younger officers in violation of the DCHRA.

49. Defendant's action gives rise to an inference of discrimination and GWU knew or should have known of the age discrimination that Plaintiff suffered. Defendant GWU's conduct has been intentional, deliberate, willful and in callous disregard of Plaintiff's rights.

50. Defendant GWU's acts of age discrimination caused Officer Todd Ladson to suffer economic losses, mental and emotional distress, embarrassment, humiliation and indignity.

51. This intentional, reckless and/or willful discrimination on the part of Defendant GWU constitutes a violation of Plaintiff's rights as under the DCHRA.

52. By reasons of Defendant GWU's discrimination, the Plaintiff is entitled to all legal and equitable remedies available under the DCHRA.

**Count III: Race Discrimination as Under Title VII**

53. Plaintiff re-alleges and incorporates by reference the allegations of all paragraphs above as though fully set forth herein.

54. Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice for an employer to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's race. 42 U.S.C. §2000(e).

55. At all times Defendant GWU was an employer subject to the provisions of Title VII.

56. At all pertinent times, Officer Todd Ladson was an African American male entitled to protection under Title VII

57. Title VII prohibits discrimination in employment "for any reason other than individual merit" including without limitation "race."

58. By terminating Officer Todd Ladson for creating a sexually hostile work environment, and violating GWU policy and procedures (including its handbook) while not terminating other similarly situated non-African American males, Defendant GWU and/or its agents or its employees acting on its behalf discriminated against Officer Ladson on the basis of his race by treating him differently from and less preferably then similarly situated non-African American officers in violation of Title VII.

59. Defendant's action gives rise to an inference of discrimination and GWU knew or should have known of the race discrimination that Plaintiff suffered. Defendant GWU's conduct has been intentional, deliberate, willful and in callous disregard of Plaintiff's rights.

60. Defendant GWU's acts of race discrimination caused Officer Todd Ladson to suffer economic losses, mental and emotional distress, embarrassment, humiliation and indignity.

61. This intentional, reckless and/or willful discrimination on the part of Defendant GWU constitutes a violation of Plaintiff's rights as under Title VII.

62. By reasons of Defendant GWU's discrimination, the Plaintiff is entitled to all legal and equitable remedies available under the Title VII.

### Count IV: Race Discrimination as Under Section 1981.

63. Plaintiff re-alleges and incorporates by reference the allegations of all paragraphs above as though fully set forth herein.

64. Defendant GWU intentionally discriminated against Plaintiff Todd Ladson on account of his race, African-American, in violation of 42 U.S.C. § 1981 by denying him equal terms and conditions of employment and/or by terminating him.

65. Plaintiff's discrimination was not experienced by other non-African American employees of the Defendant.

66. Defendant's intentionally interfered with Plaintiff's contract of employment because of their discriminatory animus towards his race, African-American. Defendant's acted in a willful and wanton manner and in callous disregard for the federally-protected rights of the Plaintiff.

67. As a direct and proximate result of this injury from the Defendant, Plaintiff has suffered and is suffering considerable injury, including but not limited to loss of substantial past and future salary and income, benefits and other privileges and entitlements of employment, loss of professional status and career enhancing and advancement opportunities and loss of retirement savings and benefits. The Plaintiff has also suffered from emotional distress arising from the loss of his job, the damage to his professional reputation and the embarrassment, humiliation, and indignity arising from the discriminatory conduct of Defendant and/or agents or employees

acting on its behalf, and the stress and anxiety caused by his wrongful termination and resultant financial hardship.

68. As a consequence of Defendant's action, it is additionally liable for attorney's fees and other costs and interest in pursuit of this litigation.

**Count V: Age Discrimination as Under the Age Discrimination in Employment Act.**

69. Plaintiff re-alleges and incorporates by reference the allegations of all paragraphs above as though fully set forth herein.

70. Under the Age Discrimination in Employment Act (ADEA): It shall be unlawful for an employer (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; and/or (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age. *See* 29 U.S.C. § 623

71. At all times Defendant GWU was an employer subject to the provisions of the ADEA.

72. At all pertinent times, Officer Todd Ladson was an African American male age 53 entitled to protection under the ADEA.

73. The ADEA prohibits discrimination in employment based on age.

74. By terminating Officer Todd Ladson for creating a sexually hostile work environment, and violating GWU policy and procedures (including its handbook)

while not terminating other similarly situated younger Officers, Defendant GWU and/or its agents or its employees acting on its behalf discriminated against Officer Ladson on the basis of his age by treating him differently from and less preferably then similarly situated younger officers in violation of the ADEA.

75. Defendant's action gives rise to an inference of discrimination and GWU knew or should have known of the age discrimination that Plaintiff suffered. Defendant GWU's conduct has been intentional, deliberate, willful and in callous disregard of Plaintiff's rights.

76. Defendant GWU's acts of age discrimination caused Officer Ladson to suffer economic losses, mental and emotional distress, embarrassment, humiliation and indignity.

77. This intentional, reckless and/or willful discrimination on the part of Defendant GWU constitutes a violation of Plaintiff's rights as under the ADEA.

78. By reasons of Defendant GWU's discrimination, the Plaintiff is entitled to all legal and equitable remedies available under the ADEA.

### Part V: PRAYER FOR RELIEF

WHEREFORE, Plaintiff Todd Ladson prays as follows:

a. That this Court enters judgment against the Defendant, George Washington University.

b. That the Court award Plaintiff damages in the amount equal to all of his accumulated lost wages, back and front pay including punitive or liquidated damages, emotional damages, plus pre-judgment and post judgment interest

and any other damages permitted in an amount no less than one million dollars ($1,000,000.00)

c. That the Court also award Plaintiff payment of all fees, costs and expenses inclusive of attorney's fees, expert fees, and court costs for bringing this instant action.

### Part VI: JURY DEMAND

Plaintiff hereby requests a trial by jury.

Dated: Thursday August 14, 2014

Respectfully Submitted,

/s/ Apinderjit (AJ) Dhali,
D.C. Bar No. 495909
Dhali PLLC
1629 K. Street, NW, Suite 300,
Washington D.C. 20001
Telephone: (202) 556-1285
Fascimile: (202) 351-0518
Email: ajdhali@dhalilaw.com

*Attorney for Plaintiff Todd Ladson*

### Proof of Service.

The undersigned hereby certifies under oath that he caused to be served and delivered the foregoing Initial Order, Summons & Complaint, via U.S. certified mail, return receipt requested to :

Ms. Susan S. Kaplan, Senior Counsel, Office of the Senior Vice President and General Counsel, The George Washington University, 2100 Pennsylvania Avenue, NW, Suite 250 Washington, DC 20052

cc: Todd Ladson

/s/ A.J Dhali



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

_____
Plaintiff

vs.                                                                Case Number  **14 - 0005029**

_____
Defendant

## SUMMONS

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

_____
Name of Plaintiff's Attorney

_____
Address

_____

_____
Telephone

*Clerk of the Court*

By _____
Deputy Clerk

Date _____

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Đế có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요    ያማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

    If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-682-2700) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

TODD M. LADSON
Vs.
GEORGE WASHINGTON UNIVERSITY

C.A. No.    2014 CA 005029 B

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the client are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and coun    ll receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to: Judge JEANETTE J CLARK
Date: August 14, 2014
Initial Conference: 9:30 am, Friday, November 14, 2014
Location: Courtroom 517
500 Indiana Avenue N.W.
WASHINGTON, DC 20001

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc